**Robert R. CUPPETT, Petitioner–Appellant,**

v.

**Jack R. DUCKWORTH,\* Superintendent, Indiana State Reformatory, Respondent–Appellee.**

No. 89–1896.

United States Court of Appeals, Seventh Circuit.

Argued June 16, 1992.

Reargued En Banc June 2, 1993.

Decided Oct. 8, 1993.

---

\* Jack R. Duckworth is substituted for his predecessor, Edward L. Cohn, as Superintendent, Indiana State Reformatory. Fed.R.App.P. 43(c)(1).

Barry Levenstam (argued), Jerold S. Solovy, Allen C. Schlinsog, Jenner & Block, Chicago, IL, for petitioner-appellant.

Michael A. Schoening, Deputy Atty. Gen., Charles R. Oehrle, Wayne E. Uhl, Deputy Atty. Gen. (argued), Federal Litigation, Indianapolis, IN, for respondent-appellee.

Before POSNER, Chief Judge, and CUMMINGS, BAUER, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

Robert Russell Cuppett filed a petition for a writ of habeas corpus in the district court challenging as unconstitutional the enhancement of his Indiana sentence for a robbery conviction. 28 U.S.C. § 2254. The enhancement, which increased Cuppett's sentence from ten to forty years, was based on a finding that he was a habitual offender under Indiana law. The district court denied Cuppett's habeas petition. We affirm.

## I.

Cuppett has committed felony offenses in three different states. On September 10, 1962, he and two others were indicted in a West Virginia state court for breaking and entering into and stealing money from a laundromat. Three days later, Cuppett pled guilty to "breaking and entering as charged in the ... indictment." Less than one month later, he received a sentence of one-to-ten years imprisonment for this offense. The court record reflects that at the guilty-plea hearing Cuppett and his codefendant "being in custody, were brought out of jail by the Sheriff and *placed before the Bar of the Court, and were without counsel, did not desire counsel appointed by this Court to represent them.*" (emphasis added). In November, 1972, Cuppett was found guilty in Illinois state court of aggravated battery and robbery. On June 10, 1981, Cuppett was convicted of robbery once again, this time in Indiana, after entering a tavern, drawing a sawed-off shotgun, cocking it, holding it to the head of the tavern's owner-manager, and ordering him to turn over his cash. The Indiana state court sentenced Cuppett to ten years imprisonment on the robbery charge. Since Cuppett had two prior felony convictions (in West Virginia and in Illinois), he was also found to be a habitual offender under Indiana Code § 35–50–2–8 and received an enhancement of his sentence of an additional thirty years imprisonment consecutive to his ten-year robbery sentence. Cuppett's conviction was affirmed on direct appeal by the Indiana Supreme Court. *Cuppett v. State,* 448 N.E.2d 298, 299 (Ind.1983).

On March 19, 1984, almost twenty-two years after his West Virginia conviction, Cuppett petitioned the Circuit Court of Monongalia County, West Virginia to vacate his 1962 conviction on the grounds that, when he pled guilty, he had not been advised of his right to assistance of counsel or that his conviction could later be used to enhance his sentence thirty years. The West Virginia court denied Cuppett's petition, and also stated that, in accordance with its practice in 1962, no transcript had been made of the guilty plea hearing. Cuppett then moved in West Virginia court for the appointment of counsel to assist him in attacking his 1962 conviction. The West Virginia court denied Cuppett's motion on May 9, 1984, stating "that this matter is final and closed in the State of West Virginia and to allow it to be reopened would mean that finality would never attach to a criminal action in this jurisdiction."

On May 2, 1984, Cuppett filed a pro se petition for post-conviction relief in Indiana state court. Cuppett argued, *inter alia,* that he received ineffective assistance of counsel because his attorney in the Indiana state court and on appeal did not object to the use of his 1962 West Virginia conviction as part of the habitual offender sentence enhancement. The Indiana post-conviction court held an evidentiary hearing to explore Cuppett's contention, and subsequently denied Cuppett's petition, specifically finding that Cuppett had waived his right to counsel. The Indiana Court of Appeals upheld the denial in an unpublished memorandum opinion. *Cuppett v. Indiana,* 502 N.E.2d 503 (Ind.App.1986) (Table). The Indiana appellate court stated that "[i]n Indiana, the general rule is that the alleged invalidity of a predicate felony may not be challenged during habitual offender proceedings when the prior final judgment is regular on its face. *Edwards v. State* (1985), Ind., 479 N.E.2d 541, 547." Mem. op. at 3. However, the court explained, "Indiana law permits a defendant to raise as a defense in the habitual offender proceeding the alleged invalidity of those prior convictions if he can show that he was not represented by counsel or *knowingly and intelligently waived such representation at the time of these convictions. Morgan v. State* (1982), Ind., 440 N.E.2d 1087, 1088." *Id.* (emphasis added). The court held that the statement on the West Virginia court judgment roll order that Cuppett "being in custody, *[was] brought out of jail by the Sheriff and placed before the Bar of the Court, and [was] without counsel, did not desire counsel appointed by this Court*" indicated that Cuppett "*was aware of his right to representation [by counsel]*" and waived it. *Id.* (emphasis added). "Consequently," the court concluded, "the record was regular on its face, and an objection [by Cuppett's attor-

ney to the use of the 1962 conviction] would have been unavailing." *Id.* The Indiana Supreme Court denied Cuppett's request for a transfer on July 21, 1987 in an unpublished order.

Having exhausted his potential state court remedies, Cuppett filed a petition for a writ of habeas corpus in Indiana federal district court in November, 1987. As in his state court petitions, his central claim was that he was denied effective assistance of counsel during his Indiana trial and direct appeal because of his attorney's failure to attack the validity of his 1962 conviction. In an unpublished order issued January 9, 1989, the district court denied Cuppett's petition. The district court began its analysis by stating that if Cuppett's "waiver of counsel during his 1962 West Virginia burglary hearing" was valid "then the ineffective assistance of counsel and unconstitutional enhancement claims are easily resolved" because Cuppett's attorneys could not be deemed incompetent for failing to challenge a conviction free of error. Turning to the waiver question, the district court stated that the West Virginia record reflected that Cuppett appeared "without counsel, and did not desire counsel appointed by this Court to represent" him. The district court reasoned that the word "appointed" carries with it

"a specific connotation referring to judicial assignment of cost free counsel to a criminal defendant. Any other use of the word would be inappropriate in the common language of trial procedure. The record, therefore, indicates that the defendant had been informed of his right to have an attorney notwithstanding his inability to pay and knowingly and intelligently waived that right. Thus his conviction was valid and was appropriately used to enhance the petitioner's robbery sentence."

The district court also ruled that the

"fact that both trial and appellant (sic) counsel failed to raise the invalid waiver issue lacks any indication of professional ineffectiveness. The determination by his attorneys that the 1962 trial court record demonstrated a valid waiver of counsel was not evidence of deficient conduct. Their familiarity with the language of the law

quite properly led to such a conclusion. Nor is it likely that any objection would have altered the outcome since the court would most likely have denied it."

Cuppett appeals the district court's denial of his petition, arguing that he received ineffective assistance of counsel.

## II.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court defined the burden a defendant must carry in order to successfully bring an ineffective assistance of counsel claim:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."

*Id.* at 687, 104 S.Ct. at 2064. This court has held that "[t]o establish that counsel's conduct was deficient, the defendant must show counsel's specific acts or omissions which, viewed from the perspective of counsel at the time of trial, fell below the standard of reasonable professional assistance." *United States v. Payne,* 741 F.2d 887, 891 (7th Cir. 1984) (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). Acts or omissions of counsel are outside the range of professionally competent assistance when "counsel's representation [falls] below an objective standard of reasonableness ... under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65. The Supreme Court cautioned that,

"[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hind-

sight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance;* that is, that defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

"[I]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted) (emphasis added). Prejudice to the defendant, the second element necessary to a finding of ineffective assistance, will be found only if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Cuppett's ineffectiveness claim is grounded in his assertion that when he pled guilty in 1962 he did not know he had a right to counsel, and therefore did not knowingly or intelligently waive that right. He maintains that both his trial and appellate counsel were constitutionally ineffective because they failed to challenge the prosecution's use of this guilty charge and plea in the habitual offender charge against him. We hold that

the West Virginia record reflects that Cuppett knowingly waived his right to counsel in the 1962 guilty plea proceeding, and since Cuppett has offered no basis for questioning the validity of that waiver, his conviction was properly used by the Indiana state courts to enhance his sentence, and his counsel's performance cannot be considered ineffective for failing to challenge its use.[1]

The West Virginia state judge who accepted Cuppett's guilty plea recounted in the official court record that Cuppett waived his right to counsel before pleading guilty, stating:

"This day came the State by the Prosecuting Attorney and the defendants, Robert Russell Cuppett and Robert Lee Warnick, being in custody, were brought out of jail by the Sheriff and placed before the Bar of the Court, and were without counsel, *did not desire counsel appointed by this Court to represent them.*"

(emphasis added).

■ Our Circuit's approach to challenges raised by a defendant to a prior conviction is similar to the one used by the Indiana appellate court in considering Cuppett's state post-conviction petition. We accord a " 'strong presumption' of constitutional validity [to] state judicial proceedings." *United States v. Ferguson,* 935 F.2d 862, 867 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992) (citation omitted). The presumption applies even in the absence of a transcript. *Id.* A defendant bears the burden of proving that the prior conviction was infected by constitutional error. *United States v. Banks,* 964 F.2d

---

1. Judge Easterbrook joins us in concluding that Cuppett failed to meet his burden of showing that his West Virginia conviction was invalid, but also offers two alternative grounds for affirming the denial of Cuppett's habeas petition. As recounted above, the Indiana post-conviction courts and the federal district court rejected Cuppett's challenge because they concluded that Cuppett had not provided any grounds to cast doubt on the validity of his West Virginia conviction. The appropriateness of Indiana's use of Cuppett's West Virginia conviction is the question which prompted us to consider this appeal en banc, and was the focus of attention at oral argument. This question is presented by the facts of the case.

In concurrence, Judge Easterbrook argues that Cuppett has forfeited his right to mount his habeas challenge. The concurrence also doubts whether Cuppett should have been permitted to wait until his Indiana sentencing to attack his West Virginia conviction, and suggests that the United States Sentencing Guidelines provide a better approach to the problem. We agree that these may well be sound alternative reasons for affirming the district court's denial of Cuppett's petition, but because the validity of the West Virginia conviction is squarely presented by the appeal, and the issue is an important one which was fully briefed and argued by the parties and thoroughly addressed by the Indiana courts and the federal district court, we choose to address Cuppett's attack on his West Virginia conviction.

687, 693 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992); *United States v. Boyer,* 931 F.2d 1201, 1204 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991); *United States v. Gallman,* 907 F.2d 639, 643 (7th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991); *United States v. Brown,* 899 F.2d 677, 680 (7th Cir. 1990). In the face of legal presumptions, ambiguities must be construed against the party carrying the burden of proof. *Cf. Pennsylvania R.R. v. Chamberlain,* 288 U.S. 333, 339, 53 S.Ct. 391, 393, 77 L.Ed. 819 (1933) (when evidence supports two inconsistent inferences, "judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences ...."). "[A] defendant can overcome the government's proof of a conviction, but only if he musters evidence of that conviction's unconstitutionality." *Gallman,* 907 F.2d at 643.

The Supreme Court has only recently approved of this allocation of burdens. In *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the Court considered Kentucky's procedures for allowing criminal defendants to challenge prior convictions used against them under a "persistent felony offender" statute. *Id.* at ——, 113 S.Ct. at 519–20. Under Kentucky law, when a defendant challenges a previous conviction, the government

> "must prove the existence of the judgment on which it intends to rely. Once this is done, a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. If the defendant refutes the presumption of regularity, the burden shifts back to the government affirmatively to show that the underlying judgment was entered in a manner that did, in fact, protect the defendant's rights."

*Id.* at ——, 113 S.Ct. at 520. The Supreme Court rejected the argument of the petitioner in *Parke* that, in a recidivism proceeding, a State could not place the initial burden on the defendant to establish that his guilty plea

in a prior conviction was knowing and voluntary when no transcripts of the guilty plea proceedings had been made. The petitioner had based this argument on *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), where the Court found reversible error when a trial judge accepted a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary, and explicitly held that waiver of rights resulting from a guilty plea cannot be presumed from a silent record. *Parke,* —— U.S. at ——, 113 S.Ct. at 523. The Court found petitioner's reliance on *Boykin* misplaced because that case involved a challenge to a conviction on direct review, while in *Parke* the petitioner was challenging a prior conviction in a separate recidivism proceeding. The Court explained that

> "[t]o import *Boykin's* presumption of invalidity into this very different context [of collateral challenges] would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, *even when the question is waiver of constitutional rights.*"

*Parke,* —— U.S. at ——, 113 S.Ct. at 523 (emphasis added). In support of this presumption of regularity, the Court cited *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), which held that

> "a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel."

*Id.* at 468–69, 58 S.Ct. at 1025. This presumption of regularity necessarily applies with equal force to the waiver of counsel which preceded Cuppett's guilty plea; it would make little sense to accord less respect to a waiver of counsel followed by a guilty plea conviction, which was likely backed up

**1138**

by such overwhelming evidence that the defendant was convinced that there was no point in challenging it, than to a conviction gained after what may have been classified as an aggressively contested jury trial.

▮▮▮▮ Under *Parke* and *Johnson*, the petitioner Cuppett, not the State, has the burden of establishing that his waiver of counsel in his 1962 conviction was not intelligently made, thus overcoming the presumption of the constitutionality of state judicial proceedings. Nevertheless, it is true that "[p]resuming waiver of counsel from a silent record is impermissible," *Burgett v. Texas,* 389 U.S. 109, 114–15, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), at least as to convictions entered before *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established an indigent defendant's right to appointed counsel.[2] *Parke,* —— U.S. at ——, 113 S.Ct. at 524. The dissent claims that "[w]hen the conviction occurred before *Gideon* and the defendant was not represented by counsel, then presuming the regularity of a state conviction is not only unwarranted, but it is impermissible! *Burgett,* 389 U.S. at 114 [88 S.Ct. at 261]." Dissent at 1152. *Burgett* contains no such holding. *Burgett* stands for the proposition that presuming waiver of counsel from a *silent* record is impermissible. 389 U.S. at 114–15, 88 S.Ct. at 261–62. Nor does *Parke* create an exception for pre-*Gideon* cases to the presumption of regularity accorded to prior convictions. In discussing *Burgett,* the *Parke* court carefully noted that it involved a situation in which "the record of the earlier proceeding did not show that the defendant had waived his right to counsel." *Parke,* —— U.S. at ——, 113 S.Ct. at 524. The crucial distinction between the case at bar and *Burgett* is that here the waiver of counsel appears on the face of the record in a clear statement in an official court document. The West Virginia court record states that Cuppett "did not desire counsel appointed by this Court to represent" him. The clear language of the official court record creates the presumption that Cuppett was informed that he had the right to court-appointed counsel paid for by the state, and that he knowingly and intelligently waived that right.

We agree with the district court that the word "appointed" carries with it this connotation; courts do not "appoint" attorneys unless they are paid for from public funds. A defendant does not express a "desire" not to have counsel "appointed" until after, and unless, he has been made aware that he has a right to appointed counsel if he so desires it. For this reason, *Smith v. Lane,* 426 F.2d 767 (7th Cir.), *cert. denied sub nom., Lash v. Smith,* 400 U.S. 874, 91 S.Ct. 103, 27 L.Ed.2d 109 (1970), is of no help to the petitioner. In *Smith,* the habeas petitioner challenged Indiana's use of a 1942 conviction in his 1948 habitual offender conviction. 426 F.2d at 768. Smith alleged that his 1942 guilty plea was invalid because he had been denied his right to counsel. *Id.* A record entry from the 1942 conviction merely stated that the petitioner was asked "if he wanted an attorney to represent him in this cause, and the said defendant stated that he did not want the service of an attorney." *Id.* We held that the district court could not properly determine from this brief record entry that the petitioner intelligently waived counsel. *Id.* at 769. This record entry, we explained, "fails to show that petitioner was advised that if he was unable to employ an attorney, the court would *appoint* one who would serve without expense to petitioner." *Id.* at 768 (emphasis added). We continued that

> "[m]erely asking a defendant if he 'wants' an attorney is not sufficient to inform him that he has a right to any attorney.
>
> "An indigent accused must know not only of his right to be represented by counsel, but must also know that if he could not procure one through his own resources the court would *appoint* a lawyer for him."

*Id.* at 769 (emphasis added). Our use in *Smith* of the word "appoint", especially in the second excerpt just quoted, demonstrates its special significance in determining whether a defendant had been offered counsel at government expense. In contrast to the record entry in *Smith,* Cuppett's sentencing order records that he "did not desire counsel

---

2. *Gideon* is fully retroactive, *Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971), and therefore Cuppett had a constitutional right to appointed counsel in 1962.

appointed" by the Court. That is more than sufficient to give rise to a presumption that he made the conscious decision to waive his right to counsel after he had been informed of his right to court-appointed counsel.[3]

All Cuppett has done to overcome the presumption created by very clear language inscribed on the West Virginia court judgment roll is to deny that he was informed of his right to appointed counsel; he has provided no evidence other than his self-serving affidavit in support of this allegation. This is not sufficient to meet his burden. *See Banks*, 964 F.2d at 693 ("self-serving testimony" does not overcome court's findings that prior conviction was constitutionally obtained); *Ferguson*, 935 F.2d at 867 (describing the defendant's affidavit as representing "paucity" of evidence in light of the presumption of a valid conviction despite the fact there was no transcript recording the proceeding); *Boyer*, 931 F.2d at 1205 (transcript revealed the judge did not give "explicit" warnings, but sentencing enhancement still valid because the only evidence that was a "self-serving" affidavit).

In arguing that he has met his burden of demonstrating that his conviction is constitutionally suspect, Cuppett asserts that in West Virginia in 1962 the word "appointed" *may* not have meant "paid for from public funds" and that the practice of the West Virginia courts at the time *may* not have been to offer indigent defendants representation at public expense. He claims that his position is bolstered by the fact that his guilty plea was entered before the Supreme Court an-

nounced in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) that indigent defendants have a right to counsel at public expense. Cuppett's arguments are entirely speculative. Neither Cuppett nor his attorney have adduced any evidence that in West Virginia in 1962 the word "appointed" carried a different meaning than it does today: an attorney named by the court and paid by the state. Nor has Cuppett presented any evidence that pre–*Gideon* West Virginia courts did not offer indigent defendants representation at public expense, nor, more specifically, that Cuppett himself was not offered appointed counsel. Tellingly, Cuppett never requested an evidentiary hearing at which he might have proved his contentions about West Virginia's custom and practice in 1962. In short, the petitioner has made no effort to demonstrate that his assertions about his 1962 conviction are supported by anything other than his allegations mounted for the first time nearly 22 years after the fact.[4]

 Cuppett apparently believes that his affidavit is enough to meet his burden, but, as noted above, we have repeatedly held that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions. This rule makes sense. If a defendant could throw into doubt the validity of a prior conviction by merely filing a self-serving document alleging that it was unconstitutionally obtained, then the burden would in effect be the government's to establish the validity of

3. *Slaton v. United States*, 356 F.Supp. 1172 (N.D.Ill.1973), cited by the dissent, is also readily distinguishable. In *Slaton*, the record reflected that the defendant had "waive[d his] right to counsel" and pled guilty. 356 F.Supp. at 1173. Unlike the record entry supporting Cuppett's conviction, the record in *Slaton* did not state that the defendant was offered *appointed* counsel.

4. The dissent speculates that the West Virginia court "may" not have used the word "appointed" when accepting Cuppett's guilty plea, while acknowledging that the court did use the word in its order recording the guilty plea. Dissent at 1156. We are obligated to rely on the judgment entered by the court describing what was said. No record evidence casts any doubt on the veracity of that judgment. The dissent's approach would apparently lead to a situation in which a

record entry not supported by a transcript of the hearing which preceded it is automatically called into question.

The dissent also briefly argues that the word "appointed" does not mean "paid for by the state." Without any evidence supporting the allegation that "appointed" meant something different in West Virginia in 1962 than what it is commonly assumed to mean in other jurisdictions, or that unusual circumstances in Cuppett's situation demonstrate that "appointed" as used in his case had some special meaning, the dissent's argument is speculative. If these claims had any validity, Cuppett was required to submit evidence to support them during his long trek through the state and federal court systems. He has not.

all prior waivers of counsel and convictions. This might very well create judicial chaos, if all criminal convictions are considered void, until the government proves that they are not. To avoid this scenario, we, like Indiana, have placed the initial burden on the defendant to demonstrate that his conviction is constitutionally suspect. Cuppett has not only failed to meet this burden; he has not even attempted to meet it.[5]

Instructive in this regard is the Supreme Court's discussion in *Parke* of a hypothetical defendant's challenge to a conviction from another jurisdiction. In those situations, the Court explained, "the defendant may be the only witness who was actually present at the earlier proceeding." *Parke*, —— U.S. at ——, 113 S.Ct. at 524. The Court reasoned that allowing the defendant to place the en-

tire burden of proof on the government by merely raising a *Boykin* claim that his guilty plea was not knowing and voluntary and pointing to a missing record would frequently force the government

> "to expend considerable effort and expense attempting to reconstruct records from far-flung States where procedures are unfamiliar and memories unreliable. To the extent that the government fails to carry its burden due to the staleness or unavailability of evidence ..., its legitimate interest in differentially punishing repeat offenders is compromised. In light of the relative positions of the defendant and the prosecution in recidivism proceedings, we cannot say that it is fundamentally unfair to place at least a burden of production on the defendant."

---

5. We note that we find the dissent's analysis of the state of West Virginia law in 1962 unpersuasive. For example, the dissent quotes from *Wade v. Skeen*, 140 W.Va. 565, 85 S.E.2d 845, 847 (1955), *overruled by State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964), but ignores the following passage from *Wade*:

> "The constitutional right of the defendant in a criminal case to be represented by counsel has been considered by this Court on numerous occasions. The right guaranteed is not a requirement that every defendant in a criminal case be represented by counsel. It is the right of a defendant to call for or demand counsel and to have counsel act pursuant to the call or demand, whether the demand is made before or after the entry of a plea. That defendant may waive the right is made clear by decisions of this Court, as well as other courts, including the Supreme Court of the United States. *It has, of course, been made clear also that such a waiver must be intelligently made*, but an intelligent waiver does not imply that a defendant must have precise, or even average, knowledge of every legal or factual question that may arise in the case. *He must, however, have sufficient intellect and knowledge to understand and appreciate the consequences of his act of waiver*."

85 S.E.2d at 847 (citation omitted) (emphasis added). Thus, it appears that as early as 1955, seven years before the entry of the guilty plea in question, the courts of the State of West Virginia understood and followed their own Supreme court's mandate that a defendant's waiver of the right to counsel "must be intelligently made." Moreover, in *State ex rel. Post v. Boles*, 147 W.Va. 26, 124 S.E.2d 697, 699, *cert. denied*, 371 U.S. 833, 83 S.Ct. 57, 9 L.Ed.2d 70 (1962), the court described the usual practice of a West Virginia trial judge in advising criminal defendants of their right to counsel prior to 1962:

> "Honorable Lewis H. Miller, Judge, now deceased; Judge Miller followed an invariable practice of inquiring of defendants charged with felonies as to whether they were represented by, or desired, counsel ... to which inquiry petitioner replied in the negative; he distinctly remembers that Judge Miller then advised petitioner of his right to counsel and asked if he desired the Court to appoint counsel, specifically advising petitioner that he was charged with approximately twelve felonies, to which petitioner replied that he did not desire the services of counsel and wanted to plead guilty; and, thereafter, the indictments were read and explained to petitioner by Judge Miller and, upon petitioner's separate pleas of guilty, the sentences shown by the record were imposed."

These excerpts from *Wade* and *Boles* undermine the dissent's claim to that it knows what the custom and practice of West Virginia courts was in 1962 as to the right to counsel. The dissent claims Judge Miller's practice was the exception, not the rule. This assertion, however, fails to explain the clear and unambiguous language contained in the docket entry in Cuppett's case. In light of the clerk's entry in the court record that Cuppett "did not desire counsel appointed by this court to represent [him]," we are convinced that he has failed to satisfy his burden of proving the invalidity of his conviction. Cuppett failed to establish the invalidity of his 1962 conviction before the Indiana court which entered his sentence, or the Indiana courts which affirmed it on direct appeal, or the Indiana courts which denied his petition for post-conviction relief, or the federal district court which denied his habeas petition. A party with the burden of persuasion loses if he fails to meet that burden. As we said above, Cuppett has not even attempted to meet his burden.

*Parke,* — U.S. at —, 113 S.Ct. at 525. We would be compromising Indiana's "legitimate interest in differentially punishing repeat offenders" were we to allow Cuppett to shift the burden of proof to the state of Indiana by simply alleging, without a scintilla of supporting evidence, that the word "appointed" did not mean counsel appointed by the court at public expense in West Virginia in 1962 and that West Virginia courts pre–*Gideon* did not offer appointed counsel to indigent defendants. Sheer speculation such as presented by Cuppett is not sufficient grounds for compelling the state of Indiana to launch an investigation into the state of the law in a foreign jurisdiction 30 years ago. The person in the best position, and with the best incentive, to undertake such an inquiry was Cuppett. This he has failed to do. We emphasize in this connection that Cuppett never attempted to attack his West Virginia conviction collaterally after *Gideon* was decided (which was barely five months after he pled guilty), but raised his right-to-counsel argument for the first time his post-conviction challenge to his Indiana habitual offender conviction. Cuppett's conviction is now over thirty-years-old; at some point a conviction must become final if the justice system is to operate in an efficient manner. We refuse to reward Cuppett's repeated delays in challenging his conviction by shifting the burden of proof to the state of Indiana to establish its validity.

A second presumption operates against Cuppett's claim. Under 28 U.S.C. § 2254(d), "factual findings of a state court are presumed to be correct in a federal habeas corpus proceeding, if the findings are made after a hearing on the merits, and are fairly supported by the record." *Lewis v. Huch,* 964 F.2d 670, 671 (7th Cir.1992).[6] "This presumption applies to the factual findings of state appellate courts as well as state trial courts." *Id.* We have held that

> "the determination of knowing and intelligent waiver is a factual inquiry. We therefore conclude that findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption."

*Perri v. Director, Department of Corrections,* 817 F.2d 448, 451 (7th Cir.), *cert. denied sub nom., Perri v. Lane,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *see also Cain v. Peters,* 972 F.2d 748, 749 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 1310, 122 L.Ed.2d 698 (1992); *Lewis,* 964 F.2d at 774–75; *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1247 n. 6 (7th Cir.1988); *Holleman v. Duckworth,* 700 F.2d 391, 395 (7th Cir.), *cert. denied,* 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). As recounted above, the Indiana state courts found, as a factual matter, that Cuppett had waived his right to counsel at the West Virginia proceeding. That finding, made after an evidentiary hearing, was "fairly supported", 28 U.S.C. § 2254(d)(8), by the record entry that Cuppett "did not desire counsel appointed" to represent him. Thus, "the burden [rests] upon [Cuppett] to establish by convincing evidence that the factual determination by the state court was erroneous." 28 U.S.C. § 2254(d). Cuppett has failed to come forward with any such evidence.[7]

---

**6.** Section 2254(d) lists several other exceptions to the presumption of correctness accorded state court findings, but none is relevant to Cuppett's petition.

**7.** The dissent argues that the 2254(d) presumption is inapplicable here because "[t]o the extent that waiver of a right is tied to factual findings by the state trial court, such deference is warranted only because the trial judge was there to witness the waiver and to assess whether it was given knowingly and intelligently." Dissent at 1153 n. 4. However, this assertion ignores the fact that the 2254(d) presumption applies with equal force to factual findings made by state appellate courts, which obviously are not able to witness waivers first-hand. *Lewis,* 964 F.2d at 671. As

the Supreme Court explained in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), § 2254(d)

> "applies to cases in which a state court of competent jurisdiction has made 'a determination after a hearing on the merits of a factual issue.' It makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any procedural requirements that must be satisfied for there to be a 'hearing on the merits of a factual issue,' other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by 'a written finding, written opinion, or other reliable and adequate written indicia.' Section

## III.

Cuppett has failed to overcome the presumption of regularity accorded convictions and thus has offered no grounds for questioning the validity of his 1962 West Virginia conviction. The West Virginia judgment documents his valid waiver of his right to counsel. We join the Indiana post-conviction courts and the federal district court in concluding that Cuppett's counsel was not ineffective for failing to challenge the 1962 conviction because there is no indication that the conviction is constitutionally suspect. The district court's denial of Cuppett's habeas petition is AFFIRMED.

EASTERBROOK, Circuit Judge, concurring.

The court persuasively explains why Cuppett has not carried his burden of showing that the West Virginia conviction is invalid under *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and I join its opinion. Although this means that Cuppett is not entitled to a writ of habeas corpus, two other routes leading to the same destination are worth exploring.

### I

Cuppett did not ask the court that imposed his sentence in Indiana to examine the validity of the West Virginia conviction. The only issue he raised on appeal was the sufficiency of the evidence. *Cuppett v. State*, 448 N.E.2d 298 (Ind.1983). So he has forfeited any opportunity to contest his sentence as an habitual offender unless he can establish cause for, and prejudice from, the default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). He attempted to do so by arguing that his lawyer rendered constitutionally inadequate assistance, a shortcoming that establishes "cause." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). The

state's court of first instance rejected this contention, ruling that a reasonably competent lawyer would have accepted the force of the West Virginia conviction because of the notation in the record that Cuppett "did not desire counsel appointed by this Court". The Court of Appeals of Indiana likewise concluded that competent counsel could have decided against challenging the West Virginia conviction, explaining: "Cuppett's 1962 order indicates that he was aware of his right to representation. Consequently, the record was regular on its face, and an objection would have been unavailing." *Cuppett v. State*, 502 N.E.2d 503 (Ind.App.1986) (Table). The court relied on *Smith v. State*, 477 N.E.2d 857, 864–65 (Ind.1985), which held that a conviction accompanied by a record showing that the defendant declined an opportunity to have counsel's aid may be used to support sentencing as an habitual offender. Cuppett's lawyer in this court scarcely mentions the need to show "cause" via ineffective assistance, no doubt understanding that his client's best chance lies in the hope that we will o'erleap this obstacle in order to resolve an interesting legal question. Current counsel deserves credit for a nice try, but the state courts got this subject exactly right.

To show that his lawyer at sentencing was constitutionally deficient, Cuppett must establish that he performed well below the norm of competence in the profession, and that this caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Assistance may be deficient, in the sense that counsel erred, without being constitutionally ineffective. Even the best lawyer slips up from time to time. With the benefit of hindsight, judges see how many a lawyer could have acted differently. On the spot, with limited time to explore options, counsel must do the best they can. Only "errors so serious that the counsel was not functioning as

2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court.... This interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts."

*Id.* at 546–47, 101 S.Ct. at 769. Thus, contrary to the dissent's assertions, § 2254(d) does not require that the fact finder have actually witnessed the waiver at issue in order for the statute's presumption to apply. We are bound by the Supreme Court's interpretation of § 2254(d).

the 'counsel' guaranteed the defendant by the Sixth Amendment" establish deficient performance. *Ibid.*

The materials at hand during Cuppett's sentencing in Indiana would not have seemed a promising vein for counsel to mine. The West Virginia judgment was regular in all respects—rendered by a court of competent jurisdiction and meeting Indiana's standards for enhancement. Anyone seeking to attack such a judgment has a steep hill to climb. Indeed, it remains unclear whether it is *possible* to surmount the challenge. *Burgett* suggests that the answer is yes, but a later case, *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), holds that in certain instances even uncounseled convictions may be used as the foundation for a recidivist conviction. See also *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (counsel not essential for misdemeanor convictions); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *United States v. Nichols*, 979 F.2d 402, 414–18 (6th Cir.1992) (uncounseled misdemeanor conviction may be used to enhance a sentence for a later crime); *United States v. Garcia*, 995 F.2d 556 (5th Cir.1993) (same). Cf. *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). But cf. *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). More recently still the Supreme Court reserved the question whether, and under what circumstances, "States must allow recidivism defendants to challenge prior guilty pleas". *Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992). Cuppett's 1962 conviction was based on a guilty plea.

To get anywhere, Cuppett's lawyer would have had to persuade the sentencing judge in Indiana that the kind of claim he seeks to present may be maintained, and that Cuppett's situation is closer to *Burgett* than to *Lewis*. It is hard to fault counsel for directing his energies elsewhere. We do not assess the competence of lawyers by whether they can navigate between seemingly opposed decisions of the Supreme Court and argue, successfully, for one side of a question that years later the Court identified as a tough subject in need of mulling over.

If counsel could have persuaded the judge to look behind the face of the West Virginia judgment, he would have encountered the notation in the record that Cuppett "did not desire counsel appointed by this Court to represent" him. That makes this case harder than *Burgett*. Because one seeking to upset a judgment bears the burden, Cuppett would have had to persuade the sentencing judge that this notation did not connote an offer of counsel at no expense. Yet "appointed" suggests such an offer. To avoid the force of this implication, counsel would have had to research the law and the practice of West Virginia, trying to ascertain what "appointed" meant there in 1962—and, if this word is insolubly ambiguous, whether the judge before whom Cuppett was standing would have appointed counsel for someone in Cuppett's shoes. Under *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), which established the rules that preceded *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), counsel had to be appointed whenever the facts or law were too complex for the defendant to handle unassisted. Judges did not appoint lawyers automatically, but neither could they leave all defendants to fend for themselves. How complex was the charge laid against Cuppett? What would a judge in West Virginia have done? More than a decade after Cuppett's sentencing in Indiana, members of this court are debating that question. That they are doing so, and finding the answer elusive, speaks directly to the "performance" component of *Strickland*. We do not call a lawyer incompetent for failing to address on the spot a subject that perplexes 11 judges with a platoon of law clerks. And it is worth pointing out once again that we have no reason to believe that in 1962 in West Virginia the word "appointed" meant anything other than what it means to us today: "at public expense", or at least "at no cost to the litigant." Cf. *Duckworth v. Eagan*, 492 U.S. 195, 203–04, 109 S.Ct. 2875, 2879–80, 106 L.Ed.2d 166 (1989). Thus there is good reason to believe that West Virginia offered Cuppett the free lawyer that *Gideon* requires.

Then there is the "prejudice" component of *Strickland*. A majority of this court believes

that the West Virginia conviction is invulnerable, so there could be no prejudice. Once again, however, we need not decide the merits to reach this conclusion. "Prejudice" is a more demanding standard than but-for causation. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). "[A]n analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

Cuppett has at least three felony convictions preceding the crime he committed in Indiana. (The prosecution proved three; we do not know whether more could have been adduced had the court decided to disregard the West Virginia conviction.) Disregard the West Virginia conviction for now. Is it "fundamentally unfair" to give an enhanced sentence to a criminal with two prior felonies? The enhancement in Indiana is 30 years, but some federal laws treat defendants even more harshly: 18 U.S.C. § 924(c) adds up to 20 years per prior conviction. See *Deal v. United States*, —— U.S. ——, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). Indiana enhances the sentence only if two of the prior convictions were imposed on different occasions; if Cuppett knocks out the West Virginia conviction the other two, imposed at the same time in Illinois, would not suffice for purposes of Indiana law. Yet the writ of habeas corpus is not a device to enforce state law. E.g., *Gilmore v. Taylor*, —— U.S. ——, —— —— ——, 113 S.Ct. 2112, 2117–18, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "Prejudice" under *Strickland* means fundamental unfairness, not a violation of state

law. So far as the Constitution is concerned, enhancement on the basis of two prior felonies that were consolidated for trial and sentencing is not "fundamentally unfair"; *Deal* disposes of any such contention. Indeed, so far as the Constitution is concerned, states may enhance sentences for prior conduct that did not result in conviction. Suppose Indiana were to treat a voluntary confession as equivalent to a conviction. Voluntariness does not depend on the presence of a lawyer. Courts regularly use uncounseled confessions taken in police stations; solemn guilty pleas in open court are more reliable. Cuppett has never contended that his guilty plea was involuntary; indeed, he has never denied that he committed the offense to which he pleaded guilty. So Indiana is back to three prior felonies, securely ascertained.[1]

Cuppett had a lawyer at trial and sentencing in Indiana. The procedure was adversarial, and none of counsel's omissions "so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Thus Cuppett cannot escape forfeiture, and his quest for a writ of habeas corpus fails without regard to the validity of the 1962 conviction.

## II

If Cuppett can establish cause and prejudice, the next question is not whether the 1962 West Virginia conviction complies with *Gideon*. It is whether Cuppett is entitled to contest that conviction by a derivative collateral attack.

After *Gideon* was decided in 1963, Cuppett could have asked the courts of West Virginia to set aside his sentence, which he was still serving. See *State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964). He did not. Instead he waited until after his conviction in Indiana had become final to ask both the courts of Indiana and now the federal courts to treat the Indiana sentence as deriv-

---

1. One reason why states prefer convictions to confessions is that the former are easy to prove; but if *Cuppett* is right, convictions may be as contestable as confessions. Another reason why states treat convictions as special is that they provide notice that increased penalties will fol-

low. Cf. *United States v. Ruffin*, 997 F.2d 343 (7th Cir.1993). Even convictions obtained without an offer of appointed counsel serve this notice function—which is why *Lewis* permits uncounseled convictions to be the basis of felon-in-possession prosecutions.

atively invalid, because its length is influenced by the West Virginia conviction. If Cuppett had objected at sentencing to the use of the West Virginia conviction, then according to *Burgett* the court would have had to decide whether that conviction appears to comply with *Gideon.* Notice the qualifications: "at sentencing"; "appears to comply." *Burgett* dealt with a claim timely raised and pursued on appeal, and it addressed only a challenge to the face of the former conviction. To get relief now, Cuppett must ask us to extend *Burgett*—to look beneath the surface of the judgment, and to do this on collateral attack once removed rather than direct review. Other courts have declined to follow such a path. E.g., *United States v. French,* 974 F.2d 687, 701 (6th Cir.1992). In deciding whether to permit this derivative collateral attack, we must consider the difference between direct and collateral review, a difference that is increasingly important in the Supreme Court's jurisprudence. E.g., *Brecht v. Abrahamson,* — U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

*Burgett* was decided during a period in which a majority of the Justices believed that review is unending—that waiver of the right to continuing collateral attack is all but impossible (only "deliberate bypass" would do) and that courts should reexamine judgments whenever necessary to ensure that no residue of error is allowed to remain. Those days are gone, and the defining decisions of that era have been overruled. E.g., *Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), overruling *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Keeney v. Tamayo–Reyes,* — U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), overruling *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The last extension of *Burgett* came in 1971, when four Justices in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), stated that a judge must decide whether a conviction complies with *Gideon* before permitting its use in impeaching the defendant. *Loper* was decided without a majority opinion (a fifth Justice concurred in the judgment), and Chief Justice Burger wrote in dissent, 405 U.S. at 494, 92 S.Ct. at 1025: "If *Burgett* does, indeed, mean what the plurality opinion reads into it, we should overrule that decision without delay. As Mr. Justice Harlan, for himself, Mr. Justice Black, and Mr. Justice White, observed [dissenting in *Burgett* ], 'We do not sit as a court of errors and appeals in state cases....' 389 U.S., at 120 [88 S.Ct. at 264]." *Burgett* was severely limited in *Lewis,* which held that an uncounseled conviction may be used to prohibit the possession of a firearm, and therefore may be the basis of conviction for being a felon in possession of a firearm. *Lewis* means that convictions said to be invalid under *Gideon* are not automatically improper bases for judicial action. Within the last year the Supreme Court relied on Justice Rehnquist's dissent in *Loper,* 405 U.S. at 500–01, 92 S.Ct. at 1027–28 (joined by Burger, C.J., and Blackmun & Powell, JJ.), ignoring the plurality's contrary view. *Parke,* — U.S. at ——, 113 S.Ct. at 524. While the Supreme Court retrenches, we should not push forward.

Indirect collateral review of judgments in the course of sentencing for other crimes creates substantial difficulties for the court. The record of the prior conviction will be elsewhere, often in another state that has no continuing interest in defending its judgment. Inquiring into the validity of such convictions bogs down the trial or sentencing at hand. Delay and distractions might be the lesser of the available evils if prior convictions were the only permissible basis for enhanced punishment. But when imposing sentence judges may consider acts that did not lead to a conviction. E.g., *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The Sentencing Guidelines contain elaborate rules about "relevant conduct" that counts against the defendant; almost none of this conduct will be the subject of a conviction. Indeed, a judge may take account of prior criminal conduct even though a jury has acquitted the defendant of charges based on these crimes. E.g., *United States v. Masters,* 978 F.2d 281, 285–86 (7th Cir.1992); *United States v. Fonner,* 920 F.2d 1330, 1332–34 (7th Cir.1990). Stationhouse confessions without the assistance of counsel are good grounds on which to enhance a

sentence, even though confessions standing alone do not support convictions. Once we see that acts proved beyond a reasonable doubt after a full-dress trial are not the only acceptable grounds for enhancement, it looks very odd to invest substantial resources determining whether a particular conviction offered in sentencing indeed meets the standards developed for full-dress litigation. Why should a judgment of conviction based on a guilty plea (that is, on a confession in open court) be *less* legitimate, as a ground for enhancement, than a stationhouse confession?

The Sentencing Guidelines suggest an approach that avoids turning sentencing into a mass collateral attack on all prior convictions, and thus preserves both finality and expeditious adjudication while assuring defendants ample opportunity to protect their rights: a judge may use a conviction to increase a sentence unless that conviction has *previously* been held invalid. U.S.S.G. § 4A1.2 Application Note 6 (amendment 353, effective November 1, 1990). The note reads:

> Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. Also, sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted. Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3 (Adequacy of Criminal History Category).

In other words, a conviction "counts" unless reversed or otherwise held invalid prior to

the sentencing—but even if a judgment does not count *as a conviction,* the sentencing court is free to consider the *conduct* that led to the conviction. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), presaged this approach. A district judge had enhanced a sentence because of three prior convictions. Later the rendering courts vacated two of these convictions in light of *Gideon.* In *Tucker* the Court concluded that resentencing was in order because the prior convictions had disappeared—but the Court did not declare that on resentencing the judge was to put the prior criminal episodes out of mind. Instead it explained that the judge must rethink the sentence with knowledge that the prior convictions had been set aside. 404 U.S. at 448, 92 S.Ct. at 592.

Defendants have ample reason to challenge their convictions on direct appeal, or collaterally while serving their sentences. The Sentencing Commission's approach relies on this incentive. Serious challenges are likely to be brought, and resolved, before the sentencing for a later offense. Convicts who wait too long can try *coram nobis,* which is available in the federal courts and many states.[2] This is what happened in *Tucker:* the defendant obtained writs of error *coram nobis* from the courts in which he had been convicted, and these writs justified resentencing on the new charge. See also *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). Any convicted person has ample opportunities to obtain review. Requiring defendants to *use* these opportunities, rather than tarry and then launch indirect collateral attacks during sentencing for some other offense, has significant benefits. It sends

**2.** Cuppett began this route to challenge his 1962 West Virginia judgment. In 1984, after his Indiana sentence, he asked the Circuit Court of Monongalia County, which rendered the judgment, to appoint counsel for him so that he could challenge it. Bypassing the question whether counsel is available at public expense to wage a collateral attack, the circuit court denied this motion on the merits, remarking that "to allow [the judgment] to be reopened would mean that finality would never attach to a criminal action in this jurisdiction." This appears to be an assertion that West Virginia has abolished the writ of error *coram nobis.* Cuppett did not pursue the matter. What would have happened had he

done so is an interesting question. Like federal courts, West Virginia has abolished *coram nobis* in civil cases. See W.Va.R.Civ.P. 60(b); cf. Fed. R.Civ.P. 60(b). *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), holds that in federal courts the writ remains available in criminal cases, but West Virginia has neither embraced nor rejected *Morgan.* The subject has not come up in a reported West Virginia decision during the last 50 years. One district court has surmised that West Virginia will follow *Morgan,* see *Miller v. Boles,* 248 F.Supp. 49 (N.D.W.Va. 1965), but the state's Supreme Court has never had an opportunity to decide either way.

persons to the rendering courts, which have the records necessary to determine whether a conviction is valid or not. It requires them to act promptly, while the information necessary to determine validity is available (and while reprosecution is possible, at least in theory, if the conviction is flawed). It simplifies the sentencing process. It winnows claims, excluding those made only because the defendant hopes that the sentencing judge will discard the conviction rather than undertake the labor of determining its validity.

Honoring judgments that remain outstanding after full opportunity for direct and collateral review does not *dis*honor the constitutional claims the defendant wishes to make. It simply establishes rules for presenting these claims to the right court, and in a timely fashion. Respecting judgments is the norm in our legal culture: the full faith and credit clause and common law principles of res judicata combine to make respect for judgments the rule. During this century courts began to readjudicate issues that were, or could have been, presented to the rendering court. E.g., *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915); *Whaley v. Johnston*, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). This development depends on a federal statute, not on constitutional right. See also Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441, 463–69 (1963). No statute expressly authorizes the form of derivative collateral attack that Cuppett wants to wage.

Three courts of appeals have concluded that the Guidelines' limit on collateral challenges during sentencing is consistent with both statute and Constitution. *United States v. Custis*, 988 F.2d 1355, 1360–63 (4th Cir. 1993); *United States v. Elliott*, 992 F.2d 853 (8th Cir.1993); *United States v. Roman*, 989 F.2d 1117 (11th Cir.1993) (in banc). Accord, *United States v. Isaacs*, 1993 WL 210537, at *2–7, 1993 U.S.App. LEXIS 14892, at *5–20 (1st Cir. June 22, 1993) (unpublished opinion). We observed in *Lowery v. McCaughtry*, 954 F.2d 422, 423–24 (7th Cir.1992), that the full faith and credit clause supports this approach and may require it. *Custis, Elliott*, and *Roman*, citing a background note to Application Note 6, allow that *Burgett* may require sentencing courts to entertain arguments based on *Gideon*, but all three courts strictly limit the exception.[3] E.g., *Roman*, 989 F.2d at 1120: "We believe that the kinds of cases that can be included in the 'presumptively void' category are small in number and are perhaps limited to uncounseled convictions." Chief Judge Tjoflat, concurring in *Roman*, 989 F.2d at 1126–29, concluded that the *Burgett* exception is no longer necessary, in light of the adequate alternative means to set aside invalid convictions. The majority in *Roman* reserved judgment on this position. *Id.* at 1120 n. 5. I find it compelling.

One court has gone loudly the other way. *United States v. Vea-Gonzales*, 986 F.2d 321, 327 (9th Cir.1993), held Application Note 6 unconstitutional, stating: "the Constitution requires that defendants be given the opportunity to collaterally attack prior convictions which will be used against them at sentencing." *The Constitution* requires this? Article I § 9 cl. 2 of the Constitution preserves the Great Writ "unless when in Cases of Rebellion or Invasion the public Safety may require" suspension, but the writ so preserved is the one known in eighteenth-century England—principally the pre-trial contest to the custodian's power to hold a person, the device that prevents arbitrary detention without trial. *Ex parte Bollman & Swartwout*, 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807);

---

3. Three other courts of appeals have concluded that Application Note 6 does not mean what it says, and that courts retain discretion to consider indirect collateral attacks on convictions that were not held invalid prior to the imposition of the new sentence. *United States v. Jakobetz*, 955 F.2d 786, 805 (2d Cir.1992); *United States v. Brown*, 991 F.2d 1162, 1165–66 (3d Cir.1993); *United States v. Canales*, 960 F.2d 1311, 1315 (5th Cir.1992). The Chairman of the Sentencing Commission, in his judicial capacity, has disagreed with these opinions. *United States v. Byrd*, 995 F.2d 536 (4th Cir.1993) (Wilkins, J.). Today's case does not depend on the right understanding of Application Note 6, to which I refer only as the source of a distinction that may inform the exercise of our power under § 2254.

*Ex parte McCardle,* 73 U.S. (6 Wall.) 318, 18 L.Ed. 816 (1868); *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). The power thus enshrined does not include the ability to reexamine judgments rendered by courts possessing jurisdiction. *Ex parte Kearney,* 20 U.S. (7 Wheat.) 39 (1822); see also Dallin H. Oaks, *Habeas Corpus in the States—1776–1865,* 32 U.Chi.L.Rev. 243, 244–45 (1965). Collateral review of judgments accordingly is subject to control by Congress, and judges are not obliged to deploy their existing power to the maximum possible extent. See *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). *Brown v. Allen* did not suggest that the Constitution of its own force creates a right to relitigate— that res judicata, although the object of special solicitude in the full faith and credit clause, violates the basic charter of government. Cf. *Withrow v. Williams,* —— U.S. ——, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (a prudential judgment, not a statutory or constitutional command, leads to the vindication of *Miranda* claims on collateral review).

The idea that the Constitution requires a sentencing judge to reexamine other courts' judgments is preposterous. The ninth circuit cited no support other than *Burgett,* which as I have stressed does not deal with collateral review of the sentence. Post-judgment attack depends on statutory authority, which is hard to find. Cuppett wants to attack the validity of a conviction after serving his sentence, yet Congress authorizes review only while the custody continues. *Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). Someone objecting to the use by state *A* of a conviction rendered by state *B,* after custody on state *B's* conviction has ended, is seeking a form of *coram nobis,* a common law rather than statutory remedy, and one confined to the court that rendered the judgment. *Lowery v. McCaughtry,* 954 F.2d at 423 (discussing the history of that writ). Current custody that is longer because of the prior conviction satisfies the jurisdictional component of § 2254, but it does not compel the court to grant relief.

Indiana is not bound by the Sentencing Guidelines, and neither are we in this proceeding under § 2254. Still, the model the Sentencing Commission has devised is a sound accommodation of the competing interests. The alternative, expanding *Burgett* after the overruling of the cases that inspired *Burgett's* outlook on the scope of collateral review, is unjustified. Cuppett had both incentive and opportunity to challenge the West Virginia judgment before he committed his crime in Indiana. Having bypassed his best opportunities, he has forfeited any entitlement to our review.

RIPPLE, Circuit Judge, concurring.

I join the judgment and the opinion of the court.

### 1.

In my view, the petitioner's claim must fail on the first prong of the test for constitutionally inadequate counsel established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). As Judge Easterbrook has detailed in the first part of his concurring opinion, it simply cannot be said that defense counsel's performance fell below "an objective standard of reasonableness." I respectfully suggest that, in this regard, our dissenting colleagues have not given sufficient heed to the Supreme Court's admonition that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689, 104 S.Ct. at 2065.

### 2.

One other matter is worthy of note in this case. The district court declined to grant the petitioner a certificate of probable cause in this case. This appeal proceeded only because a judge of this court granted the certificate after its initial denial by the district court. Although we affirm the judgment of the district court on the merits, we do so by a close vote and only after en banc

consideration, a procedure reserved for only the most troublesome of issues.

The failure of the district court to grant a certificate of probable cause in this case is symptomatic of the growing tendency in some of the district courts of this circuit to measure such applications, either explicitly or implicitly, by an inappropriately high standard. In applying this standard a district court ought to require " 'something more than the absence of frivolity,' " *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), quoting Blackmun, "Allowance of In Forma Pauperis Appeals in § 2255 And Habeas Corpus Cases," 43 F.R.D. 343, 352 (1967). The requisite showing is " 'a higher one than the "good faith" requirement of § 1915.' " *Id.* It requires that the issue under review be " 'debatable among jurists of reason' " and at least one that a court could resolve in a different manner. *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. at 3395 n. 4, quoting *Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D.Ga.1980).

All courts are under a great deal of pressure to remain in control of their dockets and new devices to triage effectively the filings that overwhelm us must be found. In the meantime, however, we must adhere to a principled application of existing standards of law and remain case-deciding, not case-processing institutions.

CUDAHY, *Circuit Judge*, with whom BAUER, FLAUM and ROVNER, *Circuit Judges*, join, dissenting.

On September 10, 1962, in the Circuit Court of Monongalia County, West Virginia, Robert Russell Cuppett, nineteen-years old and illiterate, pleaded guilty without the aid of counsel to breaking and entering and feloniously stealing $16.12 from a laundromat. Nineteen years later, the state of Indiana submitted proof of this conviction to support a finding that Cuppett was an habitual offender under Indiana law. Faced with this uncounseled, pre-*Gideon* conviction by which Cuppett's sentence for a subsequent offense would be enhanced by thirty years, Cuppett's trial and appellate counsel made no challenges to the use of this conviction. Subsequently, after seeking post-conviction relief in both West Virginia and Indiana state court, Cuppett filed this action for habeas relief alleging that he received ineffective assistance of counsel when his attorneys failed to object to the use of the uncounseled, pre-*Gideon* conviction to enhance his sentence. Today, the majority concludes without further fact-finding that Cuppett's counsel was not ineffective because Cuppett has failed to show that he was prejudiced by his counsels' representation. I respectfully dissent and would remand for an evidentiary hearing.

**I.**

At the outset, I am struck by the innumerable hoops Cuppett has jumped through in his effort to obtain some consideration of his claim. After his conviction and sentence were affirmed by the Indiana Supreme Court, *Cuppett v. State*, 448 N.E.2d 298 (Ind. 1983), Cuppett sought a writ of *coram nobis* in West Virginia to set aside or vacate the 1962 conviction. The West Virginia court denied the relief, failing to give any reason for the denial. Cuppett filed a motion for the appointment of counsel to perfect an appeal of the issue but the court denied the request, stating, "this matter is final and closed in the State of West Virginia and to allow it to be reopened would mean that finality would never attach to a criminal action in this jurisdiction." That same day, Cuppett filed another motion for the appointment of counsel to appeal the court's denial of the writ. The court then sent an official letter to Cuppett with an enclosed order denying relief. The letter quoted the language of the order as to concerns of finality and stated: "Therefore, Mr. Cuppett, the Court has proceeded as far as is possible and further consideration of your request is neither realistic nor appropriate."

During the time he was seeking a West Virginia remedy, Cuppett was also pursuing post-conviction relief in Indiana, arguing that he received ineffective assistance of counsel when his trial and appellate counsel failed to challenge the use of the 1962 conviction at the habitual offender proceeding. This relief was denied on the merits in 1985 and he appealed. *Cuppett v. State*, No. 3CR–96–584–360 (Oct. 9, 1985). The court of appeals denied the relief on the merits, noting that a

defendant can challenge prior convictions in an habitual offender proceeding in Indiana, but holding that the failure to challenge the use of the 1962 conviction was not prejudicial because the docket entry of the 1962 conviction reveals that he voluntarily waived counsel. *Cuppett v. State,* 502 N.E.2d 503 (Ind. App.1986) (table). Cuppett filed a petition for rehearing with the court of appeals which was denied. His petition requesting transfer to the Indiana Supreme Court was denied on July 21, 1987, in an unpublished order. Cuppett then filed this habeas action in the Southern District of Indiana.

Notwithstanding Cuppett's negotiation of this procedural obstacle course, Judge Easterbrook's concurrence suggests that we should not review his claim because Cuppett did not challenge the validity of his 1962 conviction on direct appeal, and therefore has forfeited our review. This position, however, misapprehends Cuppett's claim. Cuppett's claim in federal court is *not* that we should set aside his West Virginia conviction as violative of *Gideon;* nor is his claim that his Indiana habitual offender enhancement violated *Burgett.* Cuppett's habeas claim alleges that his enhancement was unconstitutional because he received ineffective assistance of counsel in violation of the Sixth Amendment and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This ineffectiveness claim no doubt subsumes the *Burgett* and *Gideon* questions, but these an-

cillary issues do not constitute the basis for his habeas action.

As to the ineffectiveness claim, there is no question that the enhanced sentence which Cuppett is serving satisfies the "in custody" requirement, *Maleng v. Cook,* 490 U.S. 488, 492–94, 109 S.Ct. 1923, 1926–27, 104 L.Ed.2d 540 (1989); *Crank v. Duckworth,* 905 F.2d 1090 (7th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Lowery v. Young,* 887 F.2d 1309 (7th Cir. 1989), that Cuppett raised this argument before the Indiana state courts and exhausted his state remedies, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that the last state court to which he presented this federal claim resolved the issue on the merits, *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and that we have habeas jurisdiction to review Sixth Amendment claims alleging ineffective assistance of counsel, regardless of the underlying attorney error, *Kimmelman v. Morrison,* 477 U.S. 365, 383, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986) (federal habeas courts have jurisdiction to hear ineffective assistance of counsel claims, even those involving claims which would otherwise be precluded under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). Clearly, Cuppett has not "forfeited" his claim. Accordingly, I see no problems, jurisdictional or otherwise, in reviewing this petition.[1]

1. I cannot see how concerns of comity, full faith and credit and finality would preclude our review, or Indiana's, of the pre-*Gideon* conviction. The principle of comity, of course, serves important interests of federalism. But we must recognize that the comity interest in the conviction is not Indiana's, but West Virginia's. Indiana must stand in the shoes of West Virginia to assert this interest and, thus, the comity interest at stake is only as strong as the interest which West Virginia places upon the conviction. The fact is, however, that West Virginia has no real further interest in preserving Cuppett's conviction there. The West Virginia judgment of conviction was enforced against Cuppett, he served his time and satisfied the judgment; any further interest in the matter by West Virginia is quite insubstantial. When the state at issue no longer has an interest in its conviction, the principle of comity is misplaced. *See Mills .v. Jordan,* 979 F.2d 1273, 1276–77 (7th Cir.1992). It makes little sense, therefore, to invoke comity on behalf of West

Virginia's interest in the conviction to preclude habeas review.

Judge Easterbrook's concurrence, moreover, suggests that the Full Faith and Credit Clause prohibits Indiana from reviewing the validity of the West Virginia conviction. *Ante* at 1147 (citing *Lowery v. McCaughtry,* 954 F.2d 422, 423–24 (7th Cir.1992)). However, there is nothing which *requires* Indiana to consider a sister state's conviction for purposes of enhancing a sentence of its own. *See Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 522, 121 L.Ed.2d 391 (1992) (noting discretion states have in combatting recidivism). If the state of Indiana chooses to enhance its sentences for habitual offenders based only upon convictions obtained in accordance with the mandates of the Constitution, what in the Constitution compels it to consider even those convictions which do not?

I am also mindful of the interests of finality and of the desire to "close the books" on a

## II.

To establish a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance was constitutionally deficient, and that this deficiency prejudiced the outcome of the trial. *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2052; *United States ex rel. Barnard v. Lane,* 819 F.2d 798, 802 (7th Cir.1987). Deficient performance is representation that falls below the level of reasonably effective assistance under all the circumstances and prevailing professional norms. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Prejudice will be found only if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. In evaluating a claim of ineffective assistance of counsel, we entertain a strong presumption that counsel's conduct was motivated by sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. I will address each of these requirements, beginning with whether the failure to challenge the conviction was prejudicial.

### A. *Prejudice*

In the seminal case of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that in all state criminal prosecutions, the Fourteenth Amendment guarantees the right of counsel to the accused, and indigent defendants have a right to counsel at government expense. A valid waiver of this right to counsel occurs only when the accused understands and intelligently rejects an offer of counsel at government expense. *See Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *Smith v. Lane,* 426 F.2d 767 (7th Cir.), *cert. denied sub nom., Lash v. Smith,* 400 U.S. 874, 91 S.Ct. 103, 27 L.Ed.2d 109 (1970). It is impermissible to use a conviction obtained in violation of *Gideon* to enhance the sentence for another offense. *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967); *United States v. Tucker,* 404 U.S. 443, 449, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972).

The majority holds that the failure to challenge the pre-*Gideon* conviction was not prejudicial to Cuppett because that conviction was valid. The centerpiece of the majority's analysis is that Cuppett bears the burden of proving the invalidity of the prior conviction and that he has failed to carry his burden. The majority, however, misinterprets the allocation of the burden of proof.

In an habitual offender prosecution, the state has the burden of proving prior constitutional convictions. *United States v. Hope,* 906 F.2d 254, 263 (7th Cir.1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991); *Marks v. Rees,* 715 F.2d 372, 375 (7th Cir.1983). When the record of a prior conviction is regular on its face, the presumption of regularity attaches, and the burden then shifts to the defendant to show that the prior conviction is constitutionally infirm. *United States v. Banks,* 964 F.2d 687, 693 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121

---

particular matter. However, the right to counsel has uniformly been considered of such importance that challenges to convictions on this ground have been excepted from rules precluding collateral review. *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990); *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). In my mind, moreover, finality is a two-way street. Cuppett has served his time for the 1962 conviction and the state of West Virginia deems the matter "closed." Prior to 1982, it is unclear what motivation Cuppett would have had to challenge the validity of the pre-*Gideon* conviction. *Cf. Mills,* 979 F.2d at 1277 n. 3. But when the state of Indiana reaches back for the conviction and attempts to pass it off as constitutional for purposes of enhancement, it seems to me that the state, not Cuppett, is the one reopening the matter. Of course, I do not question the use of prior

convictions for enhancing sentences. But once the state breathes new life into a dormant conviction, it only seems appropriate that the defendant should then have the opportunity to challenge the conviction's validity. It would be especially unjust to deny review on the basis that the defendant did not challenge the conviction on direct review or in a collateral action in the court of conviction when we have previously stated that doing so was not necessary. *Crovedi v. United States,* 517 F.2d 541, 546 (7th Cir.1975) ("we will not require in any of the cases that there have been an effort at exhaustion, i.e., an attack in the court of prior conviction.... [The] conviction ... if unconstitutionally obtained, is infirm from its incipiency."). Given our assurance that a defendant could collaterally challenge the validity of a conviction used to enhance a subsequent sentence, it would be manifestly unfair to conclude now that he has "forfeited" his claim.

L.Ed.2d 377 (1992); *United States v. Brown,* 899 F.2d 677, 680 (7th Cir.1990).

In *Parke v. Raley,* —— U.S. ——, 113 S.Ct. at 517, the Supreme Court upheld this burden-shifting scheme with respect to a Kentucky persistent felony offender statute. The Court held that the state may ultimately place the burden of proving the invalidity of prior convictions upon the defendant even when the prior convictions lacked transcripts of their proceedings. Concluding that "[t]here [was] no good reason to suspend the presumption of regularity," it noted that the colloquies required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which the defendant alleged had not been given, "have been required for nearly a quarter-century" and there was no reason to presume that the defendant was not advised of his rights when he pleaded guilty to charges in 1979 and 1981. *Parke,* —— U.S. at —— – ——, 113 S.Ct. at 523–24.

In its holding, however, the Court carefully and deliberately distinguished *Burgett.* In *Burgett,* the Supreme Court, relying on *Carnley,* had held that it was absolutely impermissible to presume waiver of counsel from a silent record and to permit a conviction so obtained to support guilt or enhance punishment for another offense. The Court in *Parke* indicated that presuming waiver from a silent record was impermissible in that sort of case because the presumption of regularity did not attach in *Burgett:* "At the time the prior conviction at issue in *Burgett* was entered, state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable

to presume that the defendant had not waived a right he did not possess." *Id.* at ——, 113 S.Ct. at 524.

*Parke* thus indicates that it is, *in general,* permissible to require a defendant challenging the use of a prior conviction for enhancement purposes to prove the invalidity of the prior conviction. This rule obtains even on the face of a silent record. But *Parke* states a crucial exception. When the conviction at issue occurred before *Gideon* and the defendant was not represented by counsel, then presuming the regularity of a state conviction is not only unwarranted, but it is impermissible! *Burgett,* 389 U.S. at 114, 88 S.Ct. at 261. Accordingly, in these instances, which are certainly rare today,[2] the burden does not shift to the defendant, but the state must bear the burden of proving the validity of the conviction without benefit of the presumption of regularity. The state may satisfy its burden by showing that the particular conviction at issue complied with *Gideon* or that the custom and practice in the jurisdiction in question at the time of the conviction was consistent with *Gideon.* *United States v. Dickerson,* 901 F.2d 579, 583 (7th Cir.1990). To be sure, proving the validity of these now rarely invoked convictions is challenging. Nonetheless, if a state elects to use an uncounseled, pre-*Gideon* conviction to enhance a sentence (in this case, by thirty years) the state must be prepared to show that the conviction complied with the mandates of *Gideon.* This has clearly been the law since *Burgett* (1967), and chaos has not resulted.

In the present case, of course, the conviction occurred prior to *Gideon* and Cuppett was not represented by counsel.[3] Conse-

---

2. The majority's concern for "judicial chaos, if all criminal convictions are considered void, until the government proves that they are not," *Ante* at 1139, is blatant *reducio* rhetoric. This alarmist claim is certainly without basis in my position or in the stance adopted by the Court in *Parke.* *Parke* makes clear that the government does not have to prove the validity of *all* prior convictions, but only those in which the presumption of regularity does not attach—specifically, the now rare pre-*Gideon* convictions.

3. In the cases relied upon by the majority for the position that the defendant bears the burden of proving the prior conviction invalid, the presumption of regularity properly attached because

in all of those cases, the defendants were represented by counsel or it was established that the defendant was informed of his right to free counsel and he knowingly and intelligently waived the right. Moreover, it seems that the convictions challenged in those cases occurred *after Gideon* and, thus, the custom and practice of the courts in question were constitutional and uniform. *United States v. Gallman,* 907 F.2d 639, 643 (7th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991), involved a 1967 guilty plea in which the defendant was represented by counsel. *United States v. Boyer,* 931 F.2d 1201, 1205 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991), involved a defendant who testified that he could not recall

quently, contrary to the majority's claim, the state bears the burden of showing that Cuppett knowingly and voluntarily waived his right to free counsel. The majority contends that the West Virginia court record entry in Cuppett's case "creates the presumption that Cuppett was informed that he had the right to counsel paid for by the court, and that he knowingly and intelligently waived that right." *Ante* at 1138. Waiver of counsel pre-*Gideon*, however, cannot be presumed but must be established. To constitute waiver, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley*, 369 U.S. at 516, 82 S.Ct. at 890. The West Virginia docket entry of Cuppett's conviction states:

> This day came the State by the Prosecuting Attorney and the defendants, Robert Russell Cuppett and Robert Lee Warnick, being in custody, were brought out of jail by the Sheriff and placed before the Bar of the Court, and were without coun-

whether he had been informed of his rights before pleading guilty, and due to the death of the court reporter, no transcript was prepared. The defendant was represented by counsel, and failed to take steps to prove that he was not informed of his rights, such as having the reporter's notes transcribed or calling his trial counsel to testify whether he received his warnings. *United States v. Ferguson*, 935 F.2d 862, 867 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992), involved a challenge to a 1977 guilty plea in which the defendant was represented by counsel and the defendant claimed that the plea was not made voluntarily. In the absence of a transcript of the plea proceedings due to the reporter's death, the court relied on the custom and practice of the court at the time of the guilty plea in order to show that the 1977 conviction was regular and that the defendant failed to rebut the burden of proving its unconstitutionality. Finally, *Banks*, 964 F.2d at 693, involved a challenge to a guilty plea based on the defendant's allegation that he was not represented by counsel and that he was not informed of his constitutional rights. The court found, however, that the state records on his guilty plea indicated that he was indeed represented by counsel, and that all was in "normal customary proper order."

In the one case cited by the majority in which the defendant challenged a guilty plea made without the aid of counsel, the court noted that the defendant was informed of his right to coun-

sel, did not desire counsel appointed by this Court to represent them.

According to the majority, this entry proves that Cuppett was informed of his right to counsel at public expense, and that he knowingly and voluntarily waived this right.[4] This conclusion is not supported by West Virginia practice prior to *Gideon* or by Seventh Circuit precedent directly in point.

My first disagreement with the majority's conclusion rests on the interpretation of the phrase "did not desire." The majority states that "[a] defendant does not express a 'desire' not to have counsel 'appointed' until after and unless he has been made aware that he has a right to appointed counsel if he so desires it." *Ante* at 1138. However, the entry does not state that Cuppett *expressed* a desire not to have counsel, it simply states that Cuppett "did not desire counsel." This is a crucial distinction, for under West Virginia law in 1962, the defendant had a right to free counsel, if at all, only if such counsel was affirmatively requested by the defendant.

sel if indigent, that the defendant knowingly waived that right and that the custom and practice of the courts in question complied with constitutional requirements. *Brown*, 899 F.2d at 680.

4. The majority also suggests that this conclusion is essentially a factual finding by the Indiana state court which we must accept under § 2254(d). In my view, however, the question of waiver in this context is predominantly, if not entirely, a question of law:

> What is the significance of the docket entry in the light of pre-*Gideon* West Virginia law and post-*Gideon* federal constitutional law? To the extent that waiver of a right is tied to factual findings by the state trial court, such deference is warranted only because the trial judge was there to witness the waiver and to assess whether it was given knowingly and intelligently. In the present context, of course, none of the Indiana judges reviewing the purported waiver were present in West Virginia in 1962 or, for that matter, have any expertise in West Virginia law. The state trial court loses its claim of special competence when the court is divorced from the underlying proceeding and is simply called upon to give its opinion as to the significance of a thirty-year-old docket entry of another state's conviction. Thus, we need not accept the state courts' opinions, but can review for ourselves whether the docket entry establishes that the defendant waived his right to counsel.

In 1962, *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), was still considered good law. The right to counsel in state criminal convictions had not yet been guaranteed to defendants under the Fourteenth Amendment. Article III, section 14 of the Constitution of West Virginia did ensure the right to counsel, but such right was "a mere privilege.... inserted for the purpose of abrogating the common-law practice under which prisoners, accused of felony, were denied such right, and to restrain the Legislature from denying it by statute." *State v. Yoes,* 67 W.Va. 546, 68 S.E. 181 (1910). The West Virginia Supreme Court of Appeals, although never holding that the clause required the state to furnish counsel at public expense, indicated that even if the state was so obliged, provision of counsel was not required unless affirmatively requested by the defendant: " 'Even if said clause makes it the duty of the state to furnish counsel when demanded, it does not follow that such action is to be taken unless demand therefor has been made....' " *Wade v. Skeen,* 140 W.Va. 565, 85 S.E. 845, 847 (1955) (quoting *State v. Kellison,* 56 W.Va. 690, 47 S.E. 166, 167 (1904)). *See also State ex rel. Post v. Boles,* 147 W.Va. 26, 124 S.E.2d 697, 702 (the right to counsel under the West Virginia constitution "is the right of a defendant to call for or demand counsel and to have counsel act pursuant to the call or demand"), *cert. denied,* 371 U.S. 833, 83 S.Ct. 57, 9 L.Ed.2d 70 (1962). The right to counsel could be waived, "and the silence of the accused, and his failure to request the assistance of counsel, is a waiver of such constitutional guaranty." *State v. Briggs,* 58 W.Va. 291, 52 S.E. 218, 219 (1905).

Not until 1964, after *Gideon,* did West Virginia overrule this line of precedent. In *State ex rel. May v. Boles,* the West Virginia Supreme Court of Appeals stated:

We are not unaware of the decisions of this Court which have held that a waiver of the right to counsel will be presumed from the failure to request counsel, a record silent as to a request for counsel, or the entry of a guilty plea. [citing *Kellison, Briggs, Yoes* and *Wade* ]

However, in the light of [*Gideon, Carnley* and *Doughty v. Maxwell,* 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964) (summarily reversing Ohio court's denial of habeas relief on ground that petitioner had failed to request assistance of counsel) ], we feel constrained to hold that a state conviction can not stand when founded on a guilty plea by a defendant unaware of his right to counsel or on a record silent as to the matter of assistance of counsel. Therefore, to the extent that the holdings and statements in [our prior precedent] are inconsistent or in conflict with this opinion, such holdings are overruled and such statements are disapproved.

139 S.E.2d 177, 181 (1964) (defendant with seventh-grade education charged with grand larceny and ultimately sentenced to term of one to ten years in prison was not "in any manner" informed of right to assistance of counsel in 1962). *See also Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975) (identifying specific questions trial judge should ask defendant to determine if guilty plea is knowing, intelligent and voluntary).

West Virginia statutory law concerning the right to counsel did not differ significantly from state constitutional law. In 1962, the West Virginia Code provided in part:

The accused shall be allowed counsel if he desire it to assist him in his defense, and a copy of the indictment, and of the list of the jurors selected or summoned for his trial ... shall be furnished him, without fee, upon his request, at any time before the jury is impaneled.

W.Va.Code § 62-3-1 (1931) (repealed 1965). This provision was expressly repealed in 1965 as part of an overhaul of the West Virginia law of criminal procedure. On the heels of *Gideon* in 1965, the West Virginia Code of Criminal Procedure was amended to its present form and provides in relevant part:

When a person under indictment for a crime indicates that he desires to plead guilty, he may be called upon to sign in open court a form acknowledging his plea to the indictment or to such count or counts thereof as he shall designate. Before accepting a plea of guilty, the court shall satisfy itself by interrogation of the

defendant or his counsel that the defendant has received a copy of the indictment and understands the nature of the charges. If the defendant is without counsel, the court shall advise him of his constitutional right to the assistance of counsel before pleading to the indictment. If the defendant is an indigent, the court shall offer to appoint counsel for him. The plea when signed and witnessed shall become a part of the record of the case. The plea shall be sufficient if it is substantially in the following form:

.　　.　　.　　.　　.

B. If the defendant has waived counsel:

STATE OF WEST VIRGINIA

vs.

Indictment No._____

———

(Defendant)

I certify that I have been advised of my constitutional right to the assistance of counsel; that I have no money to employ counsel; that I have been offered counsel at no cost to me; and that I have given up my right to have counsel provided to assist me.

I have received a copy of the indictment before being called upon to plead. It has been read or explained to me and I fully understand the nature of the charges against me, including the penalties that the court may impose.

I hereby plead guilty to said indictment and each count thereof.

Dated: _____

Witness:

———

(Defendant)

———

(Clerk)

W.Va.Code § 62–3–1a (1992). A comparison of the two statutes illustrates that it was not until 1965 that a trial judge was required to make an express offer of counsel to an indigent defendant under the West Virginia Code.

The case law and statutory law demonstrate that the custom in West Virginia in 1962 was that the defendant must take the initiative and request counsel.[5] Even assum-

---

**5.** That the right to counsel in West Virginia prior to *Gideon* did not comply with the mandates of that case cannot seriously be questioned. In the three years after *Gideon,* the West Virginia Supreme Court of Appeals found no less than 40 pre-*Gideon* convictions and enhanced sentences violated the defendants' right to counsel. *State ex rel. Johnson v. Boles,* 151 S.E.2d 213 (1966); *State ex rel. Ponton v. Boles,* 150 S.E.2d 339 (1966); *State ex rel. Wright v. Boles,* 146 S.E.2d 524 (1966); *State ex rel. Widmyer v. Boles,* 144 S.E.2d 322 (1965); *State ex rel. Browning v. Boles,* 144 S.E.2d 74 (1965); *State ex rel. Wolford v. Boles,* 144 S.E.2d 73 (1965); *State ex rel. Curtis v. Boles,* 143 S.E.2d 824 (1965); *State ex rel. Holstein v. Boles,* 143 S.E.2d 821 (1965); *State ex rel. Truman v. Boles,* 143 S.E.2d 820 (1965); *State ex rel. Hill v. Boles,* 143 S.E.2d 467 (1965); *State ex rel. Bullett v. Boles,* 143 S.E.2d 133 (1965); *State ex rel. Owens v. King,* 142 S.E.2d 880 (1965); *State ex rel. Stapleton v. Boles,* 142 S.E.2d 896 (1965); *State ex rel. Kozdron v. Boles,* 142 S.E.2d 769 (1965); *State ex rel. Walls v. Boles,* 142 S.E.2d 767 (1965); *State ex rel. Reed v. Boles,* 142 S.E.2d 733 (1965); *State ex rel. Carver v. Boles,* 142 S.E.2d 731 (1965); *State ex rel. Dayton v. Boles,* 142 S.E.2d 471 (1965); *State ex rel. Gosnell v. Boles,* 149 W.Va. 550, 142 S.E.2d 465 (1965); *State ex rel. Hall v. Boles,* 149 W.Va. 527, 142 S.E.2d 377 (1965); *State ex rel. Lovejoy v. Boles,* 149 W.Va. 532, 142 S.E.2d 374 (1965); *State ex rel. Waugh v. Boles,* 149 W.Va. 525, 142 S.E.2d 62 (1965); *State ex rel. Robison v. Boles,* 149 W.Va. 516, 142 S.E.2d 55 (1965); *State ex rel. Bryan v. Boles,* 149 W.Va. 359, 141 S.E.2d 81 (1965); *State ex rel. Cobb v. Boles,* 149 W.Va. 377, 141 S.E.2d 59 (1965); *State ex rel. Blankenship v. Boles,* 149 W.Va. 324, 141 S.E.2d 68 (1965); *State ex rel. Pettery v. Boles,* 149 W.Va. 379, 141 S.E.2d 80 (1965); *State ex rel. Whytsell v. Boles,* 149 W.Va. 324, 141 S.E.2d 70 (1965); *State ex rel. Calloway v. Boles,* 149 W.Va. 297, 140 S.E.2d 624 (1965); *State ex rel. Kelly v. Boles,* 149 W.Va. 303, 140 S.E.2d 622 (1965); *State ex rel. Wadkins v. Boles,* 149 W.Va. 306, 140 S.E.2d 620 (1965); *State ex rel. Stafford v. Boles,* 149 W.Va. 309, 140 S.E.2d 618 (1965); *State ex rel. Jackson v. Boles,* 149 W.Va. 279, 140 S.E.2d 619 (1965); *State ex rel. White v. Boles,* 149 W.Va. 281, 140 S.E.2d 591 (1965); *State ex rel. Calloway v. Boles,* 149 W.Va. 264, 140 S.E.2d 463 (1965); *State ex rel. Arbraugh v. Boles,* 149 W.Va. 193, 139 S.E.2d 370 (1964); *State ex rel. Browning v. Boles,* 149 W.Va. 181, 139 S.E.2d 263 (1964); *State ex rel. Stumbo v. Boles,* 149 W.Va. 174, 139 S.E.2d 259 (1964); *State ex rel. Hicklin v. Boles,* 149 W.Va. 163, 139 S.E.2d 182 (1964); *State ex rel. May v. Boles,* 149 W.Va. 155, 139 S.E.2d 177 (1964). Nonetheless, the majority asserts that the custom and practice of West Virginia in 1962 is subject to debate because good Judge Miller of Roane County typically advised defendants of their right to counsel in 1956. *Ante* at 1140 n. 5. I do not share the view

ing that the West Virginia Constitution required the state to furnish counsel to indigents, the trial judge had no duty to make an affirmative offer of counsel. If the defendant failed to request counsel, his right to counsel was deemed waived.[6] Thus, the sentencing judge's assertion that Cuppett "did not desire counsel" does not establish that he was informed of his right to free counsel and that he knowingly waived that right. Rather, the word "desire" in the context of state-funded counsel at this time in West Virginia quite possibly meant that Cuppett did not of his own accord "demand" or "request" free counsel. Thus, the state has certainly not shown that the conviction complies with *Gideon.*

My second disagreement with the majority relates to the significance of the term "appointed counsel." Even if I were to accept the sentencing order as sufficient to show that Cuppett explicitly declined an offer of counsel, I cannot accept it as an adequate demonstration that he understood he had a right to counsel *at court expense.*[7] In *Smith v. Lane,* 426 F.2d at 767, this Court faced a case with very similar facts. The petitioner was sentenced to life imprisonment under Indiana's habitual criminal statute, based in part on a 1942 conviction following an uncounseled guilty plea. This Court held that the following state court entry was insufficient to establish a knowing and intelligent waiver of counsel in 1942:

> [T]he said affidavit was read to him by the prosecuting attorney, and before he entered his plea he was advised by the State of Indiana the nature of the crime charged and the penalties thereof, and if he wanted an attorney to represent him in this cause, and the said defendant stated that he did

not want the service of an attorney and that he knew the nature of the crime and the penalty thereof, and that he wanted to plead guilty to the charge of Vehicle Taking as charged in the affidavit.

*Id.* at 768. We explained that a defendant's right to counsel cannot properly be considered waived "if the accused was not informed of his right to counsel even though he can not afford to pay." *Id.* at 769; *see also Slaton v. United States,* 356 F.Supp. 1172 (N.D.Ill. 1973) (minute order stating "Defendants and each of them waive right to counsel and enter pleas of guilty," found insufficient to establish a knowing and intelligent waiver of counsel in 1950 conviction; thus 1950 conviction could not be used to enhance sentence for subsequent conviction); *McDandal v. State,* 180 Ind.App. 654, 390 N.E.2d 216, 217 (1979) (citing *Smith v. Lane* with approval in reversing a conviction in which the defendant was merely asked if he "wish[ed] to get a lawyer").

In the present case, the record does not disclose that Cuppett was advised that he was entitled to court-appointed counsel at the state's expense if he was indigent. The majority, however, relies on the reasoning of the district court, and equates "appointed counsel" with "free counsel":

> The principal distinguishing characteristic of this cause is the trial court's use of the word "appointed." In legal jargon "appointed" has a specific connotation referring to judicial assignment of cost free counsel to a criminal defendant. Any other use of the word would be inappropriate in the common language of trial procedure. The record, therefore, indicates that the defendant had been informed of his right

---

that the practice of one conscientious judge sheds much light on the custom of guilty pleas in the West Virginia of 1962. Cuppett was not convicted in Roane County before Judge Miller. The fact that the practice of Judge Miller was even worth mentioning in 1956 and today suggests that such a practice was an anomaly. If the custom and practice in West Virginia in 1962 was to advise felony defendants of their right to counsel at government expense before pleading guilty, then the practice of Judge Miller would not be of memorable significance.

6. The majority makes much of the fact that the West Virginia Supreme Court of Appeals stated in *Wade* that "a waiver must be intelligently made," but it does not reconcile this statement

with the numerous decisions, including *Wade* itself, which state that the silence of the accused is a valid waiver of counsel. Apparently standing "dumb" was a sign of intelligence in pre-*Gideon* West Virginia.

7. There is no affidavit in the record stating that Cuppett was indigent at the time of the 1962 conviction. However, he does affirmatively claim he was indigent in his original *pro se* brief, and the arguments that he has made throughout his state and federal court habeas proceedings imply that he was indigent at the time. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The State of Indiana and the district court both have assumed that Cuppett was indigent.

to have an attorney notwithstanding his inability to pay and knowingly and intelligently waived that right.

*Cuppett v. Cohn,* No. IP87–1184–C (S.D.Ind. filed Jan. 9, 1989). The majority's focus on the word "appointed" leads it hopelessly astray. First, the word "appointed" may not have been used by the court when informing the defendant of his right to counsel. The docket entry could represent a summary of the judge's understanding of his interaction with Cuppett.

Second, even if the judge informed Cuppett of his right to "appointed" counsel, there is no reason to believe that, in the pre-*Gideon* period, "appointed" in fact carried the same widely understood connotation that it does today. Given the lack of a uniform standard or practice before *Gideon,* differing state practices would have lent different meanings to the term.

The majority states, however, that "courts do not 'appoint' attorneys unless they are paid for from public funds." *Ante* at 1138. I can think of at least two situations when this may well not be the case. First, a court may appoint counsel when the defendant, although not indigent, cannot immediately afford to pay for an attorney. In *United States v. Johnson,* 659 F.2d 415, 416 (4th Cir.1981), for example, the defendant was deemed unable to immediately afford counsel, but with sufficient income to pay installments to the court to defray the cost of counsel. "Counsel was appointed, and Johnson was ordered to deposit $250.00 with the court within a week and to pay $100.00 [monthly] to the court until he had paid his attorney's fees." *Id.*

Second, a court may appoint counsel at defendant's expense when the defendant is unable to obtain an attorney. This may be the case if a particularly undesirable or unpopular defendant is unsuccessful in securing counsel through his own efforts and the court must appoint counsel in order to provide an attorney to represent the defendant. Further, a court may appoint counsel in order to assist an incompetent, immature or particularly naive defendant.

In any event, even if in 1962 the term "appointed" had the same meaning it con-

notes today, it is far from clear from this fact that the defendant knowingly waived his right to counsel. Just because the *judge* or a *lawyer* in 1962 may have understood the legal significance of the term "appointed," it is *Cuppett's* understanding that is relevant here. The majority's reasoning fails to take into account the command of *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938): "[W]hether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Cf. United States v. Lowry,* 971 F.2d 55, 62 n. 6 (7th Cir.1992) (noting defendant's extensive education and business experience in rejecting claim of involuntary waiver of conflict-free counsel). The record indicates that at the time of the 1962 conviction, Cuppett was nineteen-years old and illiterate. It is by no means certain that someone in Cuppett's position would interpret "appointed" to mean "at no charge if you are poor." It is more likely that a nineteen-year-old, illiterate person would not understand "appointed" in the same terms as a person comfortably familiar with legal jargon. *See Johnson,* 659 F.2d at 415 (reversing conviction because defendant construed court's offer of appointed counsel to mean counsel appointed by court for which the defendant must pay).

In the absence of other evidence, it is a far leap to infer from the *judge's* brief description of pre-*Gideon* events that the nineteen-year-old, illiterate *defendant* understood and validly waived his right to counsel. It is a leap that we should decline to take. Contrary to the majority's analysis, the use of the word "appointed" in the sentencing order does not establish that Cuppett knowingly waived his right to free counsel.

Cuppett alleges he did not make a knowing and intelligent waiver of his right to counsel. This is not a case in which the defendant's position is supported by no more than his own self-serving statements. *See, e.g., Ferguson,* 935 F.2d at 867; *Boyer,* 931 F.2d at 1205. The curt sentencing order relied upon by Indiana does not establish that Cuppett made a knowing and intelligent waiver of his

right to counsel at government expense. West Virginia law at the time of his conviction put the burden on the defendant to request the services of counsel. In addition, Cuppett was nineteen-years old and illiterate at the time of the West Virginia conviction. These facts together with the strong presumption against the waiver of constitutional rights, *see Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023, confirm that the West Virginia conviction should not have been admitted to enhance Cuppett's sentence. Without the West Virginia conviction, the prosecution could not have established all the elements necessary for an habitual offender enhancement. Cuppett meets the "prejudice" prong of the *Strickland* test.

B. *Performance*

As I have discussed, Cuppett had a strong and meritorious argument under the Sixth Amendment. In addition, merely the date (pre-*Gideon* ) of Cuppett's West Virginia conviction and the fact that he was not represented by counsel should have alerted both

his trial and appellate counsel to the likelihood of a failure to meet the mandates of *Gideon.* The looming prospect of a thirty-year enhancement demanded some further inquiry into what occurred in West Virginia in 1962. It may be that this error by counsel sprang from another error in calculating that Cuppett had more than one other prior conviction.[8]

Having concluded that the petitioner has failed to satisfy the prejudice prong of the *Strickland* analysis, the majority does not address the performance prong. Judge Easterbrook's opinion, however, argues that Cuppett's counsel was not constitutionally deficient because it was unclear at the time whether counsel could have collaterally attacked a conviction used to enhance a sentence.[9] This contention is wholly unsupportable. Whatever may be said of the views contained in Judge Easterbrook's opinion of the proper scope of collateral review and the weight to be accorded *Burgett* in the light of recent Supreme Court precedent,[10] *Burgett*

---

8. Besides the failure to object to the West Virginia conviction, there is other information in the record suggesting that Cuppett's trial and appellate attorneys gave the habitual offender enhancement less attention than it deserved. They made two other substantial errors with respect to the habitual offender enhancement. Three felonies were presented to the jury as a basis for the habitual offender conviction: the West Virginia conviction and two Illinois convictions. But the two Illinois convictions were part of the same criminal episode. Under Indiana law they are regarded as related, so only one of the convictions can be used as the basis for a habitual offender charge. Neither his trial nor appellate counsel objected to the use of the two Illinois convictions, and the Indiana appellate court later recognized that the failure to object was probably error, though harmless since two supposedly valid convictions (including the West Virginia conviction at issue) remained. *Cuppett v. State,* 502 N.E.2d 503 (Ind.App.1986). Also, inadvertently attached to the record of the West Virginia conviction that was presented to the jury were prison conduct records and documents pertaining to an escape conviction. Nothing in these attached documents was charged in the information, so they should not have been before the jury. *Cuppett v. State,* No. 3CR–96–584–360, unpublished findings of fact and conclusions of law at 2 (Superior Ct. Oct. 9, 1985). Once again neither attorney objected.

9. Judge Easterbrook's concurrence suggests that *Burgett* was thrown into doubt by *Lewis v. United*

States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), and that we therefore cannot expect Cuppett's counsel at the time to have put much stock in *Burgett.* According to that concurrence, *Lewis* held that "in certain instances even uncounseled convictions ·may be used as a foundation for a recidivist conviction." *Ante* at 1138. *Lewis* simply held, however, that a defendant in a prosecution for being a felon in possession of a firearm may not collaterally challenge the prior felony conviction. The Court specifically distinguished *Burgett* on the ground that the uncounseled felony conviction in *Lewis* was not being used to enhance a subsequent sentence but rather was being used to impose a civil firearms disability. *Lewis,* 445 U.S. at 67, 100 S.Ct. at 922. And as the Court stated, "[e]nforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment' on the basis of a conviction that is unreliable when one considers Congress' broad purpose [of keeping firearms from potentially dangerous persons]." *Id.* (quoting *Burgett,* 389 U.S. at 115, 88 S.Ct. at 262). There is absolutely no reason to believe that *Burgett* has been undermined in any way by more recent decisions.

10. It seems to me that Judge Easterbrook's opinion relies over-much on the sentencing guidelines as a road map for present and future criminal jurisprudence. It is possible, of course, that the guidelines will provide such a chart to the course of criminal procedure. *Gideon* and *Burgett,* however, have stood the test of time for

and its progeny are still the law, as the Supreme Court specifically recognized in *Parke.* Perhaps more importantly to our inquiry, the *Burgett* line of cases were the law at the time of the alleged ineffectiveness. Even beyond *Burgett,* cases such as *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and *Prophet v. Duckworth,* 580 F.2d 926, 927 (7th Cir.1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1251, 59 L.Ed.2d 476 (1979), which held that an uncounseled conviction unconstitutional under *Gideon* could not be used for impeachment purposes, and *Tucker,* 404 U.S. at 443, 92 S.Ct. at 589, and *Crovedi,* 517 F.2d at 543, which held that an uncounseled conviction unconstitutional under *Gideon* could not be used for sentencing purposes, clearly suggested that the use of such convictions was impermissible and that the principle of *Burgett* was alive and well. And *Smith v. Lane,* 426 F.2d at 769, made it abundantly clear that a defendant could collaterally challenge a conviction obtained in violation of *Gideon* when such a conviction is used to enhance his sentence.

And even if, for whatever reason, it was somehow questionable whether such an attack was available in federal court,[11] it was clear at the time, and still is today, that *Indiana* permits the defendant to raise as a defense to an habitual offender charge the invalidity of the prior conviction on the grounds that the predicate conviction was obtained in violation of *Gideon.* In *Hall v. State,* a case decided near the time of the alleged ineffectiveness, the Indiana Supreme Court stated that, "it is also clear that a defendant may raise as a defense the asserted invalidity of those prior convictions [including a 1965 Arkansas guilty plea] if he can show the he was not adequately represented by counsel or knowingly and intelligently waived such representation at the time of the prior conviction." 273 Ind. 507, 405 N.E.2d 530, 536 (1980) (citing, among other state cases, *Burgett* ). *See also Morgan v. State,* 440 N.E.2d 1087, 1088 (Ind.1982) (habitual offender defendant may raise as defense the invalidity of the prior convictions) (citing *Hall* and *Burgett* ).

In 1985, the Indiana Supreme Court procedurally limited challenges to predicate felony convictions in habitual offender proceedings. It held that the proper avenue for challenging these convictions was in a direct attack through appeal or post-conviction relief in the court of conviction. *Edwards v. State,* 479 N.E.2d 541, 547 (Ind.1985). Nonetheless, the court concluded that a defendant may challenge a predicate conviction if (1) the record of the conviction raises the presumption that the conviction is constitutionally infirm and (2) the constitutional infirmity undermines the integrity and reliability of the determination of guilt. *Id.* As to the second criterion, the court noted that the integrity of the determination would indeed be undermined when "the defendant was not represented by counsel or knowingly and intelligently waived such representation at the time of the prior felony conviction." *Id.* On the other hand, *Boykin* violations were not deemed to undermine the integrity of the determination of guilt. Thus, even if Cuppett's counsel were to raise the claim in an Indiana court today, the court would permit Cuppett to challenge the use of his uncounseled, pre-*Gideon* conviction at his habitual offender proceeding.

The state has offered no reasonable explanation of why Cuppett's counsel would fail to object to the admission of the 1962 conviction at trial, or why his counsel would forego this issue on appeal. It is possible, however, that Cuppett's attorneys had some legitimately strategic reason for not objecting to the 1962 conviction, though I confess I am unable to think of one. There is also the possibility that Cuppett actually told his attorneys that he knowingly and intelligently waived his right to counsel in 1962. Because of these possibilities, I would not reverse outright but would remand this cause to the district court for an evidentiary hearing. Of course, I realize that Cuppett's attorneys may have difficulty remembering specific conversations or research in this 12–year–old case, but they should have an opportunity to explain their

thirty years. It remains to be seen whether the guidelines will fare as well.

**11.** *But see supra* note 1.

conduct in the case to the extent they can remember it.

### III.

Thirty years ago, the Supreme Court stated in *Gideon:* "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided to him." 372 U.S. at 344, 83 S.Ct. at 796. Quoting from *Powell v. Alabama,* the Court admonished:

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissable. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

*Id.* at 344–45, 83 S.Ct. at 797 (quoting 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).

In the years since *Gideon,* the Court has recognized the primacy of the right to counsel in our adversarial system. Of the rights to which a criminal defendant is entitled, the Court has consistently recognized that the right to counsel guaranteed thirty years ago in *Gideon* is the paradigmatic rule of criminal procedure ensuring the "fundamental fairness and accuracy of the criminal proceeding." *Saffle,* 494 U.S. at 495, 110 S.Ct. at 1264; *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075. Moreover, the Court has held that the right to counsel means more than having an attorney at the defendant's side to hold his hand in the journey from freedom to incarceration; the Sixth Amendment right entitles the defendant to an attorney "who plays the role necessary to ensure that the trial is fair." *Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063.

In 1962, Cuppett was not represented by an attorney when he pleaded guilty to stealing $16.12 from a laundromat, and the docket entry of his conviction does not establish that he knowingly and intelligently waived his right to counsel. In 1982, Cuppett's trial and appellate counsel failed to challenge the use of the uncounseled pre-*Gideon* conviction to enhance his sentence by thirty years. Although the right to counsel in the last three decades has earned as secure a place as is conceivable, it apparently has not been secured to Robert Cuppett. I respectfully dissent.